UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeremy Shane Zimmermann,

                Petitioner,              Court File No. 20-cv-1300 (WMW/LIB)

    v.

                                    **REPORT AND RECOMMENDATION**

Shannon Reimann,

                Respondent.

      This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, and upon Petitioner Jeremy Shane Zimmermann's Petition for Writ of Habeas Corpus, [Docket No. 1].

      For the reasons discussed herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that this action be **DISMISSED with prejudice.**

**I.**      **BACKGROUND AND UNDERLYING STATE COURT PROCEEDINGS**

      On May 25, 2020, Petitioner, a Minnesota state correctional facility inmate,[1] filed with this Court his Petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody challenging the constitutionality of his underlying court proceedings. (See, Pet. [Docket No. 1]).

      The Minnesota Court of Appeals has reported the following details about the events underlying Petitioner's criminal charges:

      [Petitioner] is required by law to register as a predatory offender. In December 2011, he was convicted of violating his registration requirements. After serving time for the conviction of failure to register, as well as two additional unrelated convictions, [Petitioner] was released from prison in October 2015. Shortly after

---

[1] The Court notes that it is unclear if Petitioner currently resides inside a state correctional facility because on October 13, 2020, Petitioner filed a notice on CM/ECF informing the Court that his address is changed. [Docket No. 13]. However, the present Petition challenges the state's imposition of a 10-year conditional-release term following his period of incarceration. (Pet. [Docket No. 1]). As that conditional release term has not expired, the circumstances of his current residence are immaterial here.

[Petitioner] was released from prison, he changed his registered primary address from a residence in St. Paul to "Homeless" in St. Paul. However, in early December 2015, officers suspected [Petitioner] was staying with friends or family at an unregistered Shakopee address in Scott County.

Officers investigation of [Petitioner's] whereabouts led them to speak with [Petitioner's] girlfriend and mother, both Shakopee residents. [Petitioner's] girlfriend, T.A.B., reported to Detective Jim Blatzheim of the Shakopee Police Department that she resided in Shakopee, and that, since the time [Petitioner] had been released from prison in October 2015, he had been staying overnight at her house a couple of days per week. T.A.B. stated that she told [Petitioner] she believed he was required to register in Scott County. She also reported to Detective Blatzheim that [Petitioner] had his mail delivered to her house, and she provided the detective with samples of mail addressed to [Petitioner] at T.A.B.'s Shakopee address. Detective Blatzheim later discovered that [Petitioner's] listed address on his driver's license was T.A.B.'s residence.

[Petitioner's] mother, S.J.S., denied that [Petitioner] lived at her residence, but reported to Detective Blatzheim that he occasionally spent the night at her place sleeping on an air mattress. She reported that the last time he stayed the night was the prior weekend, and that he also "stay[ed] at his girlfriend's."

On December 17, 2015, officers located [Petitioner] at a workforce center in Shakopee and placed him under arrest for violating his registration requirements. The Scott County Attorney's Office charged [Petitioner] with two felony counts of violating Minn. Stat. § 243.166, subd. 5(a), Predatory Offender—Knowingly Violates Registration or Intentionally Provides False Information.

State v. Zimmermann, No. A18-0231, 2019 WL 1006798, at *1 (Minn. Ct. App. Mar. 4, 2019) [hereinafter Zimmermann II].

## A. **Zimmermann I**

In Zimmermann I, Petitioner appealed the state district court's denial of his motion to withdraw his guilty plea. Zimmerman v. State,[2] No. A16-1261, 2017 WL 475953, at *1 (Minn. Ct. App. Feb. 6, 2017) [hereinafter Zimmermann I]. The Minnesota Court of Appeals related the following details about Petitioner's guilty plea:

After jury selection but before trial, [Petitioner] agreed to plead guilty. [Petitioner] had "second thoughts" about pleading guilty, but after consulting with his attorney, he entered a guilty plea to knowingly violating the predatory-offender-registration requirement or intentionally providing false information. The district court sentenced him to the presumptive sentence of 39 months, and imposed a ten-year conditional-release term.

---

[2] The Court notes that Petitioner's name is misspelled.

Soon after sentencing, [Petitioner] wrote to the district court and asked to withdraw his guilty plea. Subsequently, his counsel submitted a formal motion to withdraw based on ineffective assistance of counsel, misrepresentation by counsel, and untimely disclosure. On June 6, 2016, the district court issued an order denying [Petitioner's] motion to withdraw his guilty plea.

Id. Petitioner appealed the state district court's refusal to permit him to withdraw his guilty plea. Id.

On appeal, Petitioner "challenge[d] the accuracy of his guilty plea." Id. at *2. Specifically, he "argue[d] that the facts elicited [we]re not sufficient to establish an accurate plea." Id. Petitioner "also challenged the district court's imposition of a 10-year conditional-release term as unauthorized, when the facts supporting the enhanced conditional-release term were not found by a sentencing jury and he did not waive his right to a sentencing jury." Id. at *2 n.1.

Upon review of the questions posed by the state district court to establish a factual basis for Petitioner's guilty plea, the Minnesota Court of Appeals found that "[t]he factual basis elicited by the district court does not demonstrate that [Petitioner] intentionally or knowingly violated the registration requirements, an essential element of the offense." Id. at *2. The Minnesota Court of Appeals further held that "[b]ecause the factual basis d[id] not establish the requisite mens rea, it [wa]s inadequate to support the accuracy of [Petitioner's] guilty plea." Id. Therefore, the Minnesota Court of Appeals held that the state district court erred in refusing to permit Petitioner to withdraw his guilty plea, and the court reversed and remanded. Id. at *2–3.

In light of its reversal, the Minnesota Court of Appeals declined to address Petitioner's challenge to the state district court's imposition of a 10-year conditional-release term. Id. at *2 n.1.

### B.  <u>Zimmermann II</u>

In <u>Zimmermann II</u>, Petitioner appealed his convictions, as well as, his sentence following his trial. 2019 WL 1006798. The Minnesota Court of Appeals reported the following details about Petitioner's trial and sentencing:

> In May 2017, [Petitioner] appeared back before the district court to address the status and schedule of his case going forward in light of his plea withdrawal. At the hearing, [Petitioner] discharged his public defender and elected to represent himself. During subsequent hearings before the district court, [Petitioner] requested, and the court denied, the appointment of advisory counsel. Leading up to trial, [Petitioner] continuously wavered between wanting to be represented and wanting to represent himself. [Petitioner] ultimately chose to represent himself, and the district court found that [Petitioner's] waiver of representation by counsel was knowing, intelligent, and voluntary.
>
> While [Petitioner] was in custody leading up to his trial, he made several calls to T.A.B. during which he tried to persuade her to lie under oath:
>
>> [Petitioner]: I need, I need your loyalty here and I need you to have my back, but, if they call you in [to] testify, all you have to say is, you know, I didn't, I didn't spend the night. I mean, it's just that simple, you know? Yeah, I visited you twice a week, but I didn't spend the night, you know? Because, if you say that, I'm gonna go, you know? I'm gonna get fried . . . .
>> . . . .
>> T.A.B.: I mean, I'm not gonna lie, so—I'm not gonna say, you know, I mean, you weren't living here, but yes, you were staying here, so, and you know that. And I'm not gonna lie about it. So—
>> . . . .
>> T.A.B.: I already told them that you were here and staying. If you would've f-cking told me what was going on to begin with, I could've said something different. But I f-ck, I told them the truth. I didn't know what the f-ck was going on.
>> . . . .
>> [Petitioner]: I know, it's just simple that I didn't spend the night. It's okay if I came over there and stayed—
>> T.A.B.: Yeah, you did, too, you f—
>> . . . .
>> [Petitioner]: I just need you to be on my team, you know. I know that I did stuff that, you know, that, you know, what it's gonna come down to is if I spent the night, it's gonna end up f-cking me. So, I mean, you just have, stop, I stopped by during the night a couple of times, you know? Hello?
>> . . . .

> [Petitioner]: You could just say that I, you could just say that I stopped, stopped by a couple of times during the night, but I never spent the night or slept over at your house, you know? That's the thing. It's gonna, because otherwise, it's gonna f-ck me . . . .

In September 2017, a jury trial was held. Several officers, as well as [Petitioner's] case manager, testified to [Petitioner's] registration requirements as a predatory offender, and the state offered into evidence [Petitioner's] signed and initialed acknowledgements of his obligation to register. St. Paul Police Officer Lynette Cherry testified that, shortly after [Petitioner] was released from prison, he changed his registered address as homeless in St. Paul, and maintained that this was his primary address up until he was arrested. Officer Cherry testified:

> I asked [Petitioner] if there was any other location that he would be, especially during the hours of nighttime when you were—when you are sleeping that he was staying, any other intersections, places, things like that that he was staying during the week or in the upcoming days for that week. And he said no. He was staying every night [in his vehicle] at the Walmart parking lot in St. Paul.

Because Officer Cherry suspected that [Petitioner] was staying at his girlfriend's or mother's residence in Shakopee, she testified that she had suggested to him that he register those addresses:

> I had asked [Petitioner] if he wanted to register or write down on his homeless check-ins any address he was staying at in Shakopee, you know, just to be compliant. And he said no. He was only going to be staying at the Walmart parking lot.

Detective Blatzheim also testified at trial. He testified to what T.A.B. and S.J.S. had reported to him, that [Petitioner's] listed address on his driver's license was T.A.B.'s residence in Shakopee and that [Petitioner] had never registered with the Shakopee Police Department.

T.A.B. also testified. She testified that she resided in Shakopee and that, from the time [Petitioner] was released from prison in October 2015 until he was arrested in December 2015, [Petitioner] "would come and stay" at her residence approximately "two, three times a week." She explained that he would "come at night and stay until the next morning," and that, at times, he would "stay consecutive nights." She testified that [Petitioner] received mail at her residence in Shakopee, and that he kept "[c]lothes, papers, [and a] few boxes of stuff" there. During T.A.B.'s testimony, the state offered into evidence two pieces of [Petitioner's] mail addressed to T.A.B.'s home. T.A.B. testified that she had suggested to [Petitioner] that he register in Scott County.

The state also offered into evidence audio recordings of [Petitioner's] phone calls to T.A.B. in which he asked T.A.B. to testify that he did not spend the night at her residence. T.A.B. testified that she believed [Petitioner] made those calls

"[t]o try to get [her] to lie and say that he didn't stay at [her] house when he did." [Petitioner] called several witnesses of his own and also testified in his own defense.

Before jury deliberation, [Petitioner] requested that the district court use a dictionary definition of "stay," which indicated an individual stays somewhere if he "remain[s] in a fixed location for an extended period of time." [Petitioner] argued, "I mean, my whole argument is that, yeah, I did visit. But I was only over there for a few hours." The district court denied [Petitioner's] request, stating that it would instruct the jury that "[i]f [it] [has] not defined a word or phrase, [the jury] should apply the common, ordinary meaning of that word or phrase." [Petitioner] was found guilty of both counts of violating his registration requirements.

In [Petitioner's] presentence investigation (PSI) report, probation recommended that [Petitioner] be sentenced to 43 months. The PSI noted [Petitioner's] "lengthy criminal history including 20 prior felony convictions as well as numerous misdemeanors." It also stated: "Since [Petitioner] was previously released from prison as a risk level three, a 10 year period of conditional release applies."[3]

The district court sentenced [Petitioner] to 39 months' imprisonment for count one and imposed a 10-year conditional-release term. The district court did not formally adjudicate [Petitioner] on count two. [Petitioner] objected to the district court's imposition of the 10-year conditional-release term, explaining that he was actually a level-two offender and offered to show the district court paperwork confirming this to be true.[4] The district court rejected [Petitioner's] contention and imposed the 10-year conditional-release term.

Id. at *1–3.

Petitioner appealed his convictions, as well as, the state district court's imposition of a 10-year conditional-release term. Zimmermann II, 2019 WL 1006798. Petitioner was represented by counsel on appeal, and he argued to the Minnesota Court of Appeals that: (1) "the district court abused its discretion by denying his request for a jury instruction defining the term, 'staying;'" (2) "his two felony convictions for failure to register must be reversed because the state presented insufficient evidence to prove that he was 'staying' in Scott County;" (3) "that count two must be reversed because the state presented insufficient evidence that he was required to register a

---

[3] Minn. Stat. § 243.166, subd. 5a, mandates the court to impose a 10-year conditional-release term for violations committed by level-three offenders.

[4] [Petitioner's] End of Confinement Review (ECRC) Risk Assessment Report, dated May 20, 2010, recommended [Petitioner] receive a risk-level three, however, the report assigned [Petitioner] a risk-level two.

6

secondary address;" (4) "he is entitled to a new trial because the district court abused its discretion by summarily denying his requests for a different attorney;" and (5) "that his 10-year conditional-release term 'is unauthorized by law and must be vacated.'" Id. at *3–9 (footnote omitted).

The Minnesota Court of Appeals rejected Petitioner's first four arguments. Specifically, the court concluded that: the state district court did not abuse its discretion by "[i]nstructing the jury 'to apply the common, ordinary meaning of' 'stay;'" "there was sufficient evidence to permit the jurors to find [Petitioner] guilty of failing to register in Scott County within 24 hours of entering the jurisdiction;" "there was sufficient evidence to permit the jurors to find [Petitioner] guilty of failing to register a secondary address;" and "the district court's denial of substitute counsel was not an abuse of discretion." Id. at *3–8. Those arguments and determinations are not relevant to the present Petition. (See, Pet. [Docket No. 1]).

As his fifth argument, Petitioner argued "that his 10-year conditional-release term '[wa]s unauthorized by law and must be vacated." Zimmermann II, 2019 WL 1006798, at *8. Specifically, he asserted "that 'the state presented insufficient evidence' to support the district court's imposition of a 10-year conditional release term," and "[h]e contend[ed] that the proper remedy [wa]s to vacate the term because 'subjecting [him] to a resentencing trial at which the state would be allowed to prove to a jury the fact necessary to support imposition of the 10-year conditional release term would violate the prohibition against double jeopardy.'" Id.

The Minnesota Court of Appeals noted that "a district court may not impose a 10-year conditional-release term for a conviction of failing to register as a predatory offender absent a jury's finding or the defendant's admission that he was a level-three offender at the time of the violation." Id. (citing State v. Her, 862 N.W.2d 692, 693 (Minn. 2015)). The Minnesota Court of Appeals further noted that "a second prosecution can occur only after jeopardy from the first

prosecution has terminated," and "jeopardy does not terminate unless the fact finder affirmatively rejects the existence of aggravating factors in a manner that can fairly be called an 'acquittal' on those factors." Id. (quoting Hankerson v. State, 723 N.W.2d 232, 236–37 (Minn. 2006)).

Accordingly, the Minnesota Court of Appeals "agree[d] with [Petitioner] that the district court improperly imposed a 10-year term of conditional release, but [it] reject[ed] [Petitioner's] argument that the proper remedy [wa]s to vacate the term." Id. The Minnesota Court of Appeals found that the state presented no evidence in support of the 10-year term of conditional release "presumably because the district court indicated that [Petitioner's] level-three status would be 'put to a jury *after* a verdict on the elements.'" Id. (emphasis in original). The Minnesota Court of Appeals concluded that "[b]ecause the record [wa]s absent of any indication that the jury 'affirmatively reject[ed]' evidence regarding [Petitioner's] risk-level status—again, presumably because the state was not given the opportunity to present such evidence— . . . remanding the case to the district court would not subject [Petitioner] to a 'second prosecution.'" Id. at *9. The Minnesota Court of Appeals instructed that "[o]n remand, the district court may empanel a sentencing jury to determine whether [Petitioner] was a level-three predatory offender when he committed the offense, or the district court may obtain [Petitioner's] express waiver of a sentencing jury." Id.

On April 3, 2019, Petitioner requested review of the foregoing state appellate court decision by the Minnesota Supreme Court. (Appellant's Apr. 3, 2019, Pet. for Further Review [Docket No. 10-19]). Petitioner, through his appellate counsel, argued that the state appellate court should have vacated his 10-year conditional-release term because double jeopardy barred the resentencing trial on remand. (See, Id. at 7–11).

On May 28, 2019, the Minnesota Supreme Court denied Petitioner's request for further review. (Order [Docket No. 10-21]).

### C. Zimmermann III

In Zimmermann III, Petitioner appealed his sentence following his sentencing trial. State v. Zimmermann, No. A20-0290, 2020 WL 6554660 (Minn. Ct. App. Nov. 9, 2020) [hereinafter Zimmermann III]. The Minnesota Court of Appeals reported the following details about Petitioner's sentencing trial:

> The day of his sentencing trial, [Petitioner] moved to dismiss, arguing that the district court lacked jurisdiction because his sentence expired in March 2019. The court reserved ruling on the motion. During trial, the state presented the testimony of a department of corrections employee and, without objection, two documents: (1) a 2011 report from an end-of-confinement review committee designating [Petitioner] as a level-three offender and (2) a public fact sheet the department distributed to local law enforcement upon [Petitioner's] 2015 release, which notifies the community about his predatory-offender status, and includes several statements describing his underlying sexual misconduct. The jury found that [Petitioner] was a level-three offender at the time of the registration offenses. The district court then denied [Petitioner's] jurisdictional objection and re-imposed the ten-year conditional-release term.

Id. at *1.

Petitioner appealed his sentence. Zimmermann III, 2020 WL 6554660. Petitioner was represented by counsel on appeal, and he argued to the Minnesota Court of Appeals "that the district court (1) lacked jurisdiction to impose a conditional-release term after his executed prison term expired and (2) committed plain error by admitting unobjected-to other-acts evidence at his sentencing trial." Id.

The Minnesota Court of Appeals noted Petitioner had been on notice he would be subject to a conditional-release term since the beginning of the case because "[t]he Complaint noted the requirement of '10 year conditional release for violations committed by level III offenders' and alleged that [Petitioner] is a 'level III offender.'" Id. at *2. The Minnesota Court of Appeals further

noted that Petitioner acknowledged that conditional-release term in his initial guilty plea, the conditional-release term was included in his sentence following the guilty plea, he was sentenced again to a conditional-release term after a jury found him guilty following the withdrawal of his guilty plea, and the state appellate court in Zimmermann II expressly rejected his request to vacate the conditional-release term thereby putting Petitioner "on notice that he would be subject to a conditional-release term on remand unless a fact-finder determined that he was not a level-three offender." Id. Therefore, the Minnesota Court of Appeals concluded that the state district court "retained jurisdiction to re-impose the mandatory conditional release term." Id. The Minnesota Court of Appeals also found that Petitioner had "not demonstrated that he [wa]s entitled to relief based on the district court's failure to redact the statements describing his past sexual misconduct." Id. The Minnesota Court of Appeals affirmed Petitioner's sentence. Id. at *3.

On December 8, 2020, Petitioner requested review of the most recent state appellate court decision by the Minnesota Supreme Court. See, State v. Zimmerman, No. 70-CR-15-23903, Register of Actions (Minn. Dist. Ct.). It is unclear on the present record what Petitioner argued in that request for review as neither party has provided the Court will Petitioner's request for review in Zimmermann III.

## II.    PRESENT PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 1].

On May 25, 2020, Petitioner filed in this Court the present Petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. (Pet. [Docket No. 1]).

Petitioner asserts two grounds for granting the writ: (1) the Minnesota Court of Appeals' decision in Zimmermann II to remand for a sentencing trial violated the Double Jeopardy Clause; and (2) the prosecution provided insufficient evidence in Zimmermann II to support the imposition of a 10-year conditional-release term. (Id.; see also, Reply [Docket No. 12], at 3).

10

### III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for all § 2254 habeas actions. 28 U.S.C. 2244(d)(1). The one-year period begins on the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

If a habeas petition is timely filed, then "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA establishes that federal courts are to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Moreover, a federal court may not grant relief to a Petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. See, Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" refers to the holdings, but not the dicta, of United States Supreme Court opinions released prior to the date on which the state court issued its decision. See, Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102–03 (D. Minn. 2008), aff'd, 575 F.3d 785 (8th Cir. 2009). An "unreasonable application" of federal law occurs when the state court identifies the correct governing legal rule but then applies it unreasonably to the petitioner's case. See, Williams, 529 U.S. at 408–09. A federal court "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Federal district courts may not conduct de novo review of a prisoner's constitutional claims. See, Yarborough v. Alvarado, 541 U.S. 652, 665 (2004). Rather, the AEDPA imposes a highly deferential standard which demands that the state court decisions be given the benefit of the doubt. See, Renico v. Lett, 559 U.S. 766, 773 (2010). When reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

12

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Lundy, 455 U.S. at 518–19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

## IV.    ANALYSIS

As a threshold matter, the Court finds that the present Petition was filed within the one-year statute of limitations established by the AEDPA. The Minnesota Supreme Court denied Petitioner's request for further review in Zimmermann II on May 28, 2019. (Order [Docket No. 10-21]).

Petitioner filed the present Petition for Writ of Habeas Corpus on May 25, 2020, within the one-year limitations period under the AEDPA. (See, Pet. [Docket No. 1]).

### A.  Ground One: Double Jeopardy

Respondent argues that Petitioner has failed to exhaust his remedies in state court because he "has a pending appeal challenging the lawfulness of his 10-year conditional release period." (Answer [Docket No. 10], at 8–9). Petitioner acknowledges that he has an appeal pending before the state court in Zimmermann III. (Reply [Docket No. 12], at 2). However, Petitioner makes clear that his present Petition does not challenge the proceedings in Zimmermann III. (See, e.g., Id. at 3). Petitioner asserts that he now exclusively challenges the proceedings in Zimmermann II, and he contends that he has exhausted his remedies in reference to those proceedings. (See, e.g., Id.).

13

A state prisoner must first exhaust state court remedies before seeking federal habeas relief. This gives the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.

To exhaust available state remedies, the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Fair presentment requires that prisoner to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. . . . Further, a federal claim has not been fairly presented to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

Foster v. Fabian, No. 7-cv-4317 (JRT/JJG), 2009 WL 921063, *3 (D. Minn. March 31, 2009) (citations and quotations omitted).

In Zimmermann II, Petitioner requested further review of the state appellate court's decision by the Minnesota Supreme Court. (Appellant's Apr. 3, 2019, Pet. for Further Review [Docket No. 10-19]).[5] In that request, Petitioner argued that the state appellate court should have vacated his 10-year conditional-release term, rather than reversed and remanded, because a subsequent sentencing trial on remand would violate the Double Jeopardy Clause of the Fifth Amendment. (See, Id.). Accordingly, this Court finds that Petitioner fairly presented his double jeopardy argument to the Minnesota Supreme Court thereby exhausting his state court remedies.

In the present matter, Petitioner argues in Ground One that the Minnesota Court of Appeals should have vacated his 10-year conditional-release term because remanding for a sentencing trial violated the Double Jeopardy Clause. (See, Reply [Docket No. 12], at 3; see also, Mem. in Supp. [Docket No. 2], at 2 ("The legal question is: did a remedy of any-thing other than vacating the 10-year conditional-release term violate the Double Jeopardy Clause of the Fifth Amendment?")).

---

[5] The Petition for further review was denied. (Order [Docket No. 10-21]).

Therefore, Petitioner contends that the Minnesota Court of Appeals decision in <u>Zimmermann II</u> to remand for a sentencing trial was contrary to clearly established federal law and involved an unreasonable application of the facts to federal law. (Pet. [Docket No. 1], at 5; Mem. in Supp. [Docket No. 2]).

The Double Jeopardy Clause of the Fifth Amendment commands that '[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.' Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." <u>Sattazahn v. Pennsylvania</u>, 537 U.S. 101, 106 (2003) (quoting <u>North Carolina v.Pearce</u>, 395 U.S. 711, 717 (1969)).

The Eighth Circuit Court of Appeals has consistently held that "[j]eopardy attaches to a prosecution when the jury is empaneled and sworn or, in a nonjury case, when the court begins to hear evidence." <u>United States v. Lewis</u>, 844 F.3d 1007, 1010 (8th Cir. 2017) (citations omitted). "Where the record clearly shows that jeopardy has not attached . . . , the defendant has failed to state a colorable double jeopardy claim." <u>Lewis</u>, 844 F.3d at 1010 (citing <u>Bailey</u>, 34 F.3d at 687).

Similarly, "[s]ome event must terminate the original jeopardy before the double jeopardy protection of the fifth amendment prevents reprosecution for the same offense." <u>United States v. Peoples</u>, 360 F.3d 892, 894 (8th Cir. 2004); <u>see</u> <u>also</u>, <u>Richardson v. United States</u>, 468 U.S. 317, 325 (1984) ("[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy."). In a trial-like sentencing phase, an acquittal, not the imposition of a sentence, is required to give rise to double-jeopardy protections. <u>Sattazahn</u>, 537 U.S. at 107 (citing <u>Stroud v. United States</u>, 251 U.S. 15, 17–18 (1919)); <u>accord</u>, <u>Peoples</u>, 360 F.3d at 895; <u>see</u> <u>also</u>, <u>Hankerson v. State</u>, 723 N.W.2d 232, 237

(Minn. 2006) ("[J]eopardy does not terminate unless the fact finder affirmatively rejects the existence of aggravating factors in a manner that can fairly be called an 'acquittal' on those factors.").

Accordingly, the U.S. Supreme Court has long held that "the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below." Lockhart v. Nelson, 488 U.S. 33, 39 (1988); accord, United States v. Tateo, 377 U.S. 463, 465 (1964). However, in Burks v. United States, the U.S. Supreme Court recognized a narrow exception to this rule and held that "when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain a jury verdict, the Double Jeopardy Clause bars a retrial on the same charge." Lockhart, 488 U.S. at 39 (citing Burks v. United States, 437 U.S. 1, 18 (1978)).

Here, Petitioner argues that the Burks exception applies because "the court of appeals acknowledged that there was 'insufficient evidence.'" (Mem. in Supp. [Docket No. 2], at 7–8). Thus, Petitioner contends that the Minnesota Court of Appeals' decision to remand in Zimmermann II is contrary to clearly established federal law. (See, Mem. in Supp. [Docket No. 2]). However, Petitioner misinterprets the Minnesota Court of Appeals' decision in Zimmermann II, and he misapplies the Burks exception.

The Minnesota Court of Appeals did not find that the evidence was insufficient to sustain a jury verdict. Rather, the Minnesota Court of Appeals found that no jury had been empaneled and therefore no evidence had been presented to a jury regarding whether he was a level III offender at the time of the violation for which he was convicted "because the district court indicated that [Petitioner's] level-three status would be 'put to a jury *after* a verdict on the elements.'" Zimmermann II, 2019 WL 1006798, at *8 (emphasis in original). The state district court, however,

did not submit this sentencing issue to a jury, but instead, it imposed the 10-year period of conditional release on its own. The <u>Burks</u> exception simply does not apply to the present circumstance. <u>See</u>, <u>Lockhart</u>, 488 U.S. at 39 (citing <u>Burks</u>, 437 U.S. at 16) ("<u>Burks</u> was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury."); <u>Berry v. Fabian</u>, No. 08-4859 ADM/JJK, 2009 WL 1687796, at *4 ("[T]here was no acquittal of [the petitioner] of the aggravating factors. The state was not getting a second chance to prove something it failed to prove the first time.").

Petitioner also argues that the Minnesota Court of Appeals' decision was based on an unreasonable determination of the facts because the state agreed to withdraw its aggravating sentencing motion. (Mem. in Supp. [Docket No. 2], at 4). Petitioner bases his argument on a single line of from <u>Hankerson v. State</u>, which hypothesized that "[a]pplying the reasoning of <u>Sattazahn</u> and <u>Lockhart</u> here, if the state in the first trial had not sought an aggravated sentence . . . double jeopardy <u>might</u> prevent the retrial of those to factors to a sentencing jury on resentencing." <u>See</u>, 723 N.W.2d 232, 238 (Minn. 2006) (emphasis added). Notwithstanding the fact that the statement in <u>Hankerson</u> to which Petitioner points is equivocal, dicta, and not itself U.S. Supreme Court precedent, Petitioner's argument fails because that statement is wholly inapplicable here.[6]

In the present Petition, Petitioner challenges the imposition of a 10-year conditional-release term. As noted by the state trial judge, "[c]onditional release is not an aggravated sentence," and

---

[6] Petitioner also references <u>State v. Nomeland</u>, A15-2037, 2017 WL 562492 (Minn. Ct. App. Feb. 13, 2017), which he contends is a "mirror-image" of his case. (<u>See, e.g.</u>, Reply [Docket No. 12], at 5). However, <u>Nomeland</u> is not "clearly established Federal law, as determined by the Supreme Court of the United States," and therefore, it may not form the basis for habeas relief. <u>See</u>, 28 U.S.C. § 2254(d). Moreover, even in matters of state law, decisions of the Minnesota Court of Appeals are not binding on this Court.

the state "didn't waive the conditional release."[7] (October 26, 2017, Tr. [Docket No. 10-8], at 4). Moreover, "if a risk-level-III predatory offender is convicted for failing to register," as was Petitioner, "conditional release is mandatory and nonwaivable." State v. Franson, 921 N.W.2d 783, 786 (Minn. Ct. App. 2018); see also, Minn. Stat. § 243.166, subd. 5a; State v. Dean, A18-1514, 2020 WL 877920, at *2 (Minn. Ct. App. Feb. 24, 2020) (emphasis in original) ("A district court *must* impose a ten-year conditional-release term for any *risk-level-III* offender who commits a registration offense.").

In Zimmermann II, the Minnesota Court of Appeals observed that "the district court indicated that [Petitioner's] level-three status would be 'put to a jury *after* a verdict on the elements.'" 2019 WL 1006798. At *8 (emphasis in original). That finding is not unreasonable. Indeed, Petitioner has acknowledged the same. (See, Appellant's Apr. 3, 2019, Pet. for Further Review [Docket No. 10-19]) ("The Court and prosecutor agreed that the risk-level question 'ought to be put to a jury after a verdict on the elements.'"). Because that question of Petitioner's risk-level status was never actually presented to a jury in Zimmermann II, because the state district court imposed the 10-year period of conditional release itself, it was reasonable for the Minnesota Court of Appeals to find there was not an acquittal, original jeopardy did not terminate, and double-jeopardy protections would not be implicated in a sentencing trial on remand. See, Sattazahn, 537 U.S. at 106–07; Lockhart, 488 U.S. at 39; Tateo, 377 U.S. at 465; Peoples, 360 F.3d 894; Hankerson, 732 N.W.2d at 237.

The Minnesota Court of Appeals considered Hankerson v. State, 723 N.W.2d 232 (Minn. 2006), and it noted that "a second prosecution can occur only after jeopardy from the first prosecution has terminated," and "jeopardy does not terminate unless the fact finder affirmatively

---

[7] The state had originally noticed that it would "seek an aggravated sentence based on being a career offender," but it later withdrew that motion. (See, Appellant's Apr. 3, 2019, Pet. for Further Review [Docket No. 10-19], at 5).

rejects the existence of aggravating factors in a manner that can fairly be called an 'acquittal' on those factors." Id. at *8. Applying that standard, the state appellate court in Zimmermann II concluded that, because a jury had not affirmatively rejected any evidence of Petitioner's risk-level status, original jeopardy had not terminated and a sentencing trial on remand would not violate the Double Jeopardy Clause. Id.

Accordingly, the Minnesota State Court of Appeals applied the correct federal standard, and its decision to remand for a sentencing trial was not contrary to clearly established federal law and did not involve an unreasonable application of the facts to federal law. See, Sattazahn, 537 U.S. at 106–07; Lockhart, 488 U.S. at 39; Tateo, 377 U.S. at 465; Peoples, 360 F.3d 894; Hankerson, 732 N.W.2s at 237; see also, Cindrich v. Minnesota, No. 09-2296 (PJS/JJK), 2010 WL 2301530, at *4–5 (D. Minn. Feb. 23, 2010), report and recommendation adopted by 2010 WL 2509929 (D. Minn. June 4, 2010) (finding that a state appellate court decision which relied on Hankerson and concluded the use of a sentencing jury to consider aggravating factors in a resentencing hearing did not violate the Double Jeopardy Clause was not contrary to, and did not involve an unreasonable application of, clearly established federal law); Berry, 2009 WL 1687796, at *3–4 (finding a resentencing hearing to determine aggravating factors did not violate the Double Jeopardy Clause).

Therefore, the Court recommends that Ground One as asserted in the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and **dismissed with prejudice**.

### B.  Insufficient Evidence

Petitioner argues in Ground Two of the present Petition that the state provided insufficient evidence in Zimmermann II before the trial court to support the imposition of a 10-year conditional-release term. (Id.; see also, Reply [Docket No. 12], at 3). Specifically, Petitioner argues

that "[a]t sentencing, the state offered no evidence to support the [state district] court's imposition of a 10-year conditional-release term." (Pet. [Docket No. 1], at 7).[8]

As already noted, Petitioner has clearly indicated that his present Petition exclusively challenges the proceedings in <u>Zimmermann II</u>. (<u>See</u>, Reply [Docket No. 12], at 2). Accordingly, Petitioner is purportedly challenging the imposition of a 10-year conditional-release term by the state trial judge following his conviction, and he has made clear before this Court that he is <u>not</u> challenging the sufficiency of the evidence provided before a jury to support the imposition of a 10-year conditional-release term following his sentencing trial in <u>Zimmermann III</u>.

In <u>Zimmermann II</u>, the Minnesota Court of Appeals reversed his sentence after finding no evidence had been presented on the issue of Petitioner's risk-level status because that issue had never in fact been presented to a jury. 2019 WL 1006798, at *8–9. The Minnesota Court of Appeals remanded to the state district court to empanel a sentencing jury to determine Petitioner's risk-level status at the time of the underlying offense. <u>Id.</u> at *10.[9]

Therefore, the 10-year conditional-release period that Petitioner is currently subject to stems from his sentencing in <u>Zimmermann III</u>. Because Petitioner has clearly articulated that he does <u>not</u> challenge <u>Zimmermann III</u>, Petitioners argument asserted as Ground Two does <u>not</u> present any issue for this Court to address. <u>See, e.g.</u>, <u>Potter v. Norwest Mortg., Inc.</u>, 329 F.3d 608,

---

[8] It is not entirely clear whether Petitioner fairly presented this claim to the Minnesota Supreme Court. Petitioner argued to the Minnesota Supreme Court that "the state offered no evidence as to Petitioner's risk-level status," but he did so in the context of his broader double jeopardy argument. (<u>See</u>, Appellant's Apr. 3, 2019, Pet. for Further Review [Docket No. 10-19], at 2, 5–7, 9). Considering the fact that the issue of fair presentment does not alter the result of this action, as well as, the fact that that Respondent does not specifically argue that this claim was not fairly presented in <u>Zimmermann II</u>, the Court will consider this claim on the merits. <u>See</u>, <u>Barret v. Acevedo</u>, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

[9] In <u>Zimmermann III</u>, a sentencing trial was conducted, a jury found that Petitioner was indeed a level III predatory offender at the time of the underlying offense, and the state district court sentenced Petitioner to a 10-year condition-release period. 2020 WL 6554660, at *1.

611 (8th Cir. 2003) ("Article III of the Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies."). The 10-year conditional-release period imposed on Petitioner in Zimmermann II was reversed and remanded for a sentencing trial before a jury, hence any challenge to the evidence supporting that reversed sentence is now moot.[10]

Accordingly, the Court recommends that Ground Two as asserted in the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and **dismissed with prejudice**.

## V.    CERTIFICATE OF APPEALABILITY

One further issue merits discussion: A habeas corpus petitioner seeking relief pursuant to § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability (hereinafter "COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review.

---

[10] Unlike the double jeopardy challenge addressed and rejected above, Petitioner's challenge to the sufficiency of evidence supporting his sentence in Zimmermann II does not implicate the validity of the sentence imposed in Zimmermann III. For instance, if this Court has found that the state appellate court's decision to remand for a sentencing trial in Zimmermann II had violated the Double Jeopardy Clause, then the act of conducting the sentencing trial in Zimmermann III would too have necessarily violated the Double Jeopardy Clause. Thus, in the context of double jeopardy, the constitutional validity of the Petitioner's sentence in Zimmermann III, on remand, is contingent on the constitutional validity of the decision to remand in Zimmermann II. Outside of the double jeopardy context, however, that contingency does not exist. The sufficiency of the evidence supporting Petitioner's sentencing in Zimmermann III is in no way dependent on the evidence, or lack there of, supporting his sentencing in Zimmermann II.

It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

## VI.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for a Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED with prejudice.**

Dated: January 29, 2021                          s/Leo I. Brisbois
                                                 Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).